**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LEISHA REAVES, individually, and on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CABLE ONE, INC., a Delaware Corporation,<br><br>Defendant. | No. CV 11-00469-PHX-JAT<br><br>**ORDER** |

Pending before the Court is a Motion to Transfer the Action to the Northern District of Alabama ("Motion to Transfer") or, in the alternative, to Dismiss the Complaint (Doc. 21), filed by Defendant Cable One, Inc. ("Cable One" or "Defendant"). For the reasons that follow, the Court will grant the Motion to Transfer.

**I. BRIEF BACKGROUND**

In late 2007, Cable One entered into a contract with NebuAd, Inc. ("NebuAd") to conduct a "pilot test of a new technology that NebuAd developed for delivering more relevant advertisements over the internet to ISP subscribers." (Doc. 21, at 3.) Although Cable One provides internet services for subscribers in nineteen different states, the NebuAd pilot test was limited to the approximately 14,000 Cable One internet subscribers located in Anniston, Alabama. (*Id.*) The pilot test ended in early 2008. (*Id.*)

On March 10, 2011, Plaintiff filed a complaint "on behalf of herself and others similarly situated" in this Court against Cable One. (Doc. 1, at 1.) The complaint alleges that Cable One violated the Electronic Communications Privacy Act when it contracted with NebuAd to allow and facilitate the use of "intercepted communications to monitor and profile individual users, inject advertisements into the web pages users visited, transmit code that caused undeletable tracking cookies to be installed on users' computers, and forge the 'return addresses' of user communications so their tampering would escape the detection of Users' privacy and security controls." (Doc. 23, at 2-3.)

**II. LEGAL STANDARD**

Defendant asks the Court to transfer this case to the Northern District of Alabama pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under § 1404(a), the Court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616 (internal quotations and citation omitted).

It is not disputed that this case could have been brought in the Northern District of Alabama. The relevant inquiry is which forum best serves "the convenience of the parties, the convenience of the witnesses, and the interests of justice." *Advanced Semiconductor Materials v. Applied Materials, Inc.*, 30 U.S.P.Q.2d 1553, 1554 (D. Ariz. 1993). The Court may consider several factors in determining whether to transfer venue, including: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the

availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The Court may also consider the relevant public policy of the forum state as an equally significant factor in the § 1404(a) balancing. *Id.* at 499.

**III. ANALYSIS**

This Order will focus on whether transferring Plaintiff's Electronic Communications Privacy Act claims is appropriate under 28 U.S.C. § 1404. The appropriate factors promulgated by the Ninth Circuit Court of Appeals shall be weighed and considered in turn.

### A. Plaintiff's Choice of Forum

The parties dispute the weight that should be given to the plaintiff's choice of forum. Courts generally defer to plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, certain factors, some of which are present here, may diminish the deference generally afforded to plaintiffs. *Pupo-Leyvas v. Bezy*, No. CV 07-1032, 2008 WL 2026276, at *5 (D. Ariz. 2008).

First, the plaintiff's chosen forum is given less deference when the plaintiff does not reside in that forum. *Pupo-Leyvas*, 2008 WL 2026276 at *5; *see also Alexander v. Franklin Resources, Inc.*, No. C 06-7121, 2007 WL 518859, at *3 (N.D. Cal. 2007). Plaintiff currently resides in Alabama, and she resided in Alabama at the time of the events that gave rise to this lawsuit.

Second, "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see also Mann v. Liberty League Int'l, LLC*, No. CV-09-1260, 2010 WL 94114, at *4 (D. Ariz. 2010). Plaintiff has filed this lawsuit "on behalf of herself and all others similarly situated" (Doc. 23 at 3), which includes approximately 14,000 high-speed Internet subscribers located exclusively in Anniston, Alabama. (Doc. 1, at 3.)

Third, a plaintiff's choice of forum should be given less deference where there is evidence of forum shopping. *Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 694 (9th Cir. 2009). Defendant states that this is the third in a series of lawsuits against Cable One

concerning the NebuAd trial conducted in Alabama. The first lawsuit was brought in the Northern District of California (Doc. 21, at 4); *see also Valentine, et al v. NebuAd, et al.*, Dkt. # 166 (entered Oct. 6, 2009). The court dismissed that action for lack of personal jurisdiction. *Id.* The second lawsuit was brought in the Northern District of Alabama (Doc. 21, at 4.); *see also Green v. Cable One*, No. 10-cv-259, Dkt. #1 (N.D. Ala. filed Feb. 4, 2010). The court dismissed that action for lack of subject matter jurisdiction because the named plaintiff in that action lacked standing. *Id.* Defendant notes that Plaintiff filed her complaint in this court about two weeks after the dismissal of the case in the Northern District of Alabama. (Doc. 21, at 11.) Plaintiff simply argues that she has not engaged in forum shopping and that she "should not [be] punished for the procedural deficiencies that blocked other plaintiffs' claims." (Doc. 23, at 8.)

One could rationally infer forum shopping here, based on the two previous suits brought by different plaintiffs, on essentially identical complaints. Even if Plaintiff's chosen venue was not the result of forum shopping, her choice of forum would still receive less deference because she is an Alabama resident and purports to represent a class of plaintiffs, all of whom reside in Alabama.

**B. Respective Parties' Contacts with Forum State and Contacts Relating to Plaintiff's Cause of Action in the Chosen Forum**

Defendant argues that neither Plaintiff nor the putative class that she represents have any contacts with Arizona. (Doc. 21, at 7.) Plaintiff is a resident of Alabama, as are all members of the putative class. Defendant also argues that the NebuAd test at issue in this case was conducted only in Anniston, Alabama. (*Id.*, at 6.) Finally, Defendant states that the "NebuAd device was installed on a Cable One network in Alabama." (Doc. 24, at 3.) Plaintiff relies on the fact that Cable One maintains its corporate headquarters in Arizona. (Doc. 23, at 8.) Plaintiff also states that the contract between Cable One and NebuAd, Inc. "was negotiated, approved and signed by employees and executives from Defendant's corporate headquarters in Phoenix, Arizona." (*Id.*) According to the Plaintiff, the contract signed in Arizona was the "gateway" necessary to allow the NebuAd test to be conducted in Alabama.

- 4 -

1  (*Id.* at 8-9.)

2        Generally, the location where relevant agreements were negotiated and executed is
3  a factor to be determined in the transfer analysis. However, the contract that Plaintiff points
4  to is one signed by Defendant and NebuAd, a third-party not named in this lawsuit. Plaintiff
5  was not a party to this contract at any time. Although the contract between Defendant and
6  NebuAd may have been the necessary impetus for the activity that led to this action, the
7  ultimate issue in this case hinges around the NebuAd internet interceptions that occurred
8  exclusively in Alabama. Since the most relevant events at issue in this case occurred
9  exclusively in Alabama, this factor weighs in favor of transfer.

10        **C. Convenience to Parties and Witnesses and Ease of Access to Sources of Proof**

11        Cable One argues that the Arizona forum would be highly inconvenient to the
12  approximately 14,000 putative class members, all of whom reside in Alabama. (Doc. 21, at
13  8.) Cable One states that all of these putative class members would "be parties and potential
14  witnesses if ever a class were certified," and also notes that this group "would be potential
15  witnesses even at the class certification stage." (*Id.*) Cable One also suggests that "[a]ny
16  Cable One personnel who interacted locally with plaintiff and other members of the proposed
17  class also would reside in Alabama." (*Id.*) The Plaintiff counters that "it will not be necessary
18  for more than a few of the putative class members to be deposed" because all putative class
19  members "have the same liability claims against Defendant." (Doc. 23, at 6.) Plaintiff further
20  states that Arizona is a more convenient forum for the non-party witnesses it anticipates
21  calling from NebuAd, all of whom reside in California. (*Id.,* at 7.) Plaintiff presumes that any
22  documents or tangible evidence relevant to this action would be found in California. (*Id.,* at
23  7-8.) Finally, Plaintiff points out that Arizona is the corporate headquarters for Cable One
24  and that "Arizona is a presumptively convenient forum for it." (*Id.,* at 5.)

25        The convenience of the forum to party and non-party witnesses is the "most critical
26  factor to review." *International Comfort Prods., Inc. v. Hanover House*, 739 F.Supp. 503,
27  507 (D. Ariz. 1989). The court should not give undue weight to the number of witnesses, but
28  should examine the "materiality and importance of the anticipated witness' testimony." *Gates*

1 *Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984).

2 Although Arizona is the location of the Defendant's corporate headquarters, Cable One is a large national corporation that provides internet services to customers in nineteen different states, including Alabama. Defendant is also the one seeking this transfer, which suggests that Alabama would not be an inconvenient forum for it. Plaintiff has made essentially the same argument, noting that the fact of her filing the complaint in Arizona demonstrates that this is not an inconvenient forum for her. However, neither Plaintiff nor the 14,000 members of the putative class reside in Arizona, a fact that necessarily rebuts the argument that Arizona is a convenient forum for the plaintiff and the entire putative class. *See Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990) (stating that "great deference is due plaintiffs because a showing of convenience by a party who has sued *in his home forum* will usually outweigh the inconvenience the defendant may have shown") (emphasis added).

14 Based on the briefs filed by both parties, this Court cannot easily evaluate and weigh the materiality and importance of anticipated witnesses. Defendant makes a vague reference to Cable One personnel who might be located in Alabama, but does not elaborate with specificity what role, if any, these potential witnesses might play in this action. Defendant also alludes, with similar vagueness, to the fact that members of the putative class will be called as witnesses. Plaintiff does state that it expects to call various employees of NebuAd as witnesses, and that all these witnesses reside in California. Thus, the non-party witnesses expected by Plaintiff to appear would have to endure any inconvenience that may be associated with travel regardless of whether Arizona or Alabama is the ultimate forum for this litigation. Furthermore, the inconvenience to the 14,000 putative class members who reside in Alabama cannot be overlooked. Plaintiff concedes that at least some members of the putative class will need to be deposed and participate in discovery, and it is unclear how many of those class members will be called to the witness stand at trial. Even those members of the putative class who are not deposed or called as witnesses may still maintain an interest in the case to which they are a party, and an Arizona forum would greatly hinder their ability

1 to participate in the action. Therefore, this factor weighs at least slightly in favor of transfer.

### D. Application of Governing Law

The Plaintiff has alleged a violation of the Electronic Communications Privacy Act, which is embodied in federal statutory law. (Doc. 23, at 9.) Thus, there is no reason to favor either the Arizona forum or the Northern Alabama forum, as both courts are capable of addressing this federal law question. The Plaintiff also argues that Arizona is the more appropriate forum because the contract between Cable One and NebuAd contains an Arizona choice of law clause. (Doc. 23, at 9.) This is not a relevant factor, however, because NebuAd is not currently a party to this lawsuit, and the contract is not applicable to the Plaintiff or any of the putative class members. Since there are no applicable state laws unique to this lawsuit, this factor weighs against transfer.

### E. Costs of Litigation

Plaintiff argues that the cost of litigation will not be higher in Arizona than in Alabama. (Doc. 23, at 10.) Plaintiff states that Cable One has litigated at least twelve other actions in the District of Arizona based on public records. (*Id.*) Defendant states that "this point is debatable" but does not elaborate on the debate, instead stating that it is "irrelevant." (Doc. 24, at 5.) The Ninth Circuit has identified the differences in the costs of litigation in the competing forums as a relevant factor to consider. Defendant fails to offer any substantive argument to Plaintiff's claim that litigation costs will be the same in either forum, so this factor weighs against transfer.

### F. Public Policy

Finally, public policy considerations such as docket congestion, local interest in the litigation, and the burden of jury duty on the local population, may be weighed in determining whether transfer is appropriate. *Jones*, 211 F.3d at 499. The Court will discuss these factors below.

#### i. Docket Congestion

On March 2, 2011, the Ninth Circuit declared that a judicial emergency exists in the District of Arizona. *In re Approval of Judicial Emergency Declared in District of Ariz.*, 639

- 7 -

1 F.3d 970 (9th Cir. 2011) (noting that the request to declare a such a judicial emergency "is
2 virtually unprecedented: only two circuit courts have approved a judicial emergency under
3 18 U.S.C. § 3174(e) since the Speedy Trial Act was enacted, both occurring over 30 years
4 ago").

5 Cable One states that this factor "decisively favors transfer" (Doc. 21, at 8.), whereas
6 Plaintiff argues that this Court's congestion should be given little consideration. (Doc. 23,
7 at 10.) Both parties, however, overstate their case. No single factor in this analysis is
8 dispositive, but each factor should be given its due weight. The Court must consider each
9 factor equally in the § 1404(a) balancing. *Jones*, 211 F.3d at 499. Docket congestion is one
10 of many factors that may be considered in a motion to transfer, *Decker Coal Co. v.
11 Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), and here the unique existence
12 of a judicial emergency in the District of Arizona tilts in favor of transfer.

### ii. Local Interest in Case and Burden of Jury Duty

14 Cable One argues that this case is an Alabama controversy and that Arizona citizens
15 have no interest in addressing the alleged injuries. (Doc. 21, at. 7.) Cable One states that the
16 nexus of the complaint in this case occurred "entirely in Alabama to a class composed
17 exclusively of Alabama consumers." (*Id.*) For this reason, Cable One states that it would be
18 unreasonable to impose jury duty on Arizona residents who have no local interest in
19 resolving this controversy. (*Id.* at 8-9.) Plaintiff counters that this is an Arizona controversy
20 because Arizona is the corporate headquarters of Cable One. (Doc. 23, at 8.) Furthermore,
21 Plaintiff argues that the contract between Cable One and NebuAd was negotiated and signed
22 in Arizona, and that this conduct gave rise to this present action. (*Id.*)  Since Cable One is an
23 Arizona resident, Plaintiff concludes that jury duty would not be a burden on local residents.

24 The fact that Cable One is an Arizona resident is of minimal significance when the
25 nexus of this controversy revolves around the events that took place exclusively in Alabama.
26 Although the location where the relevant agreements were negotiated and executed is
27 generally a factor to be considered, that factor is not relevant here because the contract that
28 led to the pilot test program was negotiated and signed between Cable One and NebuAd.

Neither Plaintiff nor any other member of the putative class were a party to that contract. Therefore, this factor weighs in favor of transfer.

### IV. Conclusion

After careful consideration of the arguments set forth by both parties and weighing all factors promulgated by the Ninth Circuit, the Court finds that the Northern District of Alabama is the more convenient forum, and a transfer to that district would serve the interests of justice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Transfer the Action to the Northern District of Alabama (Doc. 21) is granted.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss the Complaint (Doc. 21) is denied as moot.

DATED this 7th day of November, 2011.

James A. Teilborg
United States District Judge